Randall Knox, State Bar No. 113166
870 Market Street, Suite 820
San Francisco, CA 94102
(415) 765-7500
randallknoxlaw@gmail.com

Attorney for Rodrigo Santos

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RODRIGO SANTOS,<br><br>    Defendant. | Nos. 21CR00268-001 SI<br>21CR00453-001 SI<br>22CR00345-001 SI<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date: August 25, 2023<br>Time: 11:30 a.m.<br>Hon. Susan Illston |

## STATEMENT OF THE CASE

Defendant Rodrigo Santos has pled guilty in three separate cases and is before the Court for sentencing. Defendant Rodrigo Santos submits this memorandum in support of his request for a sentence of one year and one day imprisonment.

In 21CR00268-001, SI Santos pled to ten counts of bank fraud, violations of 18 U.S.C. § 1344(2), and one count of false records in an investigation, a violation of 18 U.S.C. § 1519.

In 21CR00453-001 SI, Santos admitted honest services wire fraud, a violation of 18 U.S.C. §§ 1343 and 1346, in the case with codefendant Bernard Curran. Curran pled guilty to accepting illegal gratuities, violations of 18 U.S.C. § 666(a)(1)(B).

In 22CR00345-001 SI, Santos pled guilty to five counts of tax evasion, violations of 26 U.S.C. § 7201, for failing to report the income from the bank fraud in 21CR00268-001 SI.

- 1 -

**STATEMENT OF FACTS**

The bank fraud counts are based on checks Santos deposited in his personal account from clients of his structural engineering firm, Santos & Urrutia ("S&U"), and checks intended for the firm and his business partner, Albert Urrutia. From 2012 through 2019, Rodrigo Santos diverted over 400 checks from clients, usually in amounts between $500 and $2,000, which were intended for others, primarily the Department of Building Inspection ("DBI"). Santos simply endorsed most of the checks, but on several he clumsily wrote "RodDBI Santos" as the payee. During that same time, he misappropriated over 300 checks intended for his firm, Santos & Urrutia.

The amount of money from clients over eight years was just over $750,000. Clients have already been repaid over $300,000 and an additional $150,000 is in the court registry. Albert Urrutia has received restitution through joint property interests that were transferred by Santos.

Santos obtained almost half of the money during 2017, when he felt financial pressure to establish a film school for City College of San Francisco, where he was on the Board of Trustees.

The false records charges are invoices Santos fabricated that purported to show that he credited clients for the stolen checks.

The honest services fraud charges stem from charitable contributions made by Santos's clients at his suggestion to the San Francisco Golden Gate Rugby Association ("SFGGR"). Senior Building Inspector Bernard Curran was active in SFGGR and was involved in the projects for those clients. Out of the 119 projects that involved both Santos and Curran, 13 clients wrote checks to SFGGR totaling $9,600 over two years. Santos represented to the clients that Curran would be influenced favorably by the donations. Curran was aware of some, but not all, of the contributions. Not all of the donations were received by SFGGR or completed.

The tax evasion counts result from unreported bank fraud income. Santos will file amended tax returns which reflect a tax liability of $587,027, or $22,603 higher than calculated by the Internal Revenue Service.

From 1987 until 2020, Rodrigo Santos and former classmate Albert Urrutia operated Santos & Urrutia, a structural engineering firm concentrating on residential remodeling and construction, a complicated and byzantine process in San Francisco. S&U was generally 30% cheaper than other firms. Santos also was retained as a permit expediter because of his knowledge of building and planning codes. S&U dissolved after a civil suit by the San Francisco City Attorney which alleged the same check fraud as here.

Santos is now a sole practitioner who works from home. Because of these charges, Santos has agreed with the California Attorney General to voluntarily surrender his civil and structural engineering licenses effective September 30, 2023.

Santos was a Commissioner on and was President of the San Francisco Building Inspection Commission. He served on the San Francisco City College Board of Trustees and the San Francisco Workforce Investment Board. Santos has received Certificates of Honor and Certificates of Recognition from state and local public officials because of his civic work. His diploma, licenses and certificates are Exhibit 1.

There are dozens of Letters of Support included as Exhibit 2. Several are from client victims, who support Santos and forgive his crimes. Kevin O'Connor states "I no way feel as a [victim]" and that when he learned of the fraud he was "dumbfounded because of [Rodrigo's] character and loyalty..." Frank Stonich, another defrauded client, was also in "disbelief" and continued to employ Santos after being told he was a "victim." He recounts that "[w]hen I was very ill, I trusted Santos to act on my behalf with the City's Building Inspection Department." Peter Glikshtern, whom Santos also defrauded, writes "I have never, and do not now feel myself

- 3 -

a victim of any misdeeds on his part," and he continues to employ Santos and Santos's son Alex. Similarly, Danny Haber, another "victim," speaks about how Santos was supportive and accommodated him "despite not knowing if we'd be able to pay and sometimes we couldn't for a few months." Even Ronald Mallia, who states "Rodrigo Santos, in fact, took a modest sum of money from me, which was later repaid," would work with Santos again and asks for leniency.

Professionally, Santos has mentored, trained and employed dozens of young engineers, architects and designers. David Buckley and Arten Chan express their admiration and gratitude for Santos as a mentor and for his "exceptional kindness and positive contributions..." Architect Edward Morris credits Santos "for fostering the early success of [his] business" and found the crimes to be "so out of character with the person I have known and worked successfully with for a quarter of a century..." S&U staff engineer Paul Means recalls how when his "father was ailing and I had to take more time off due to his medical condition," Santos accommodated him. Fouzia Zaheer says that she, an immigrant woman in real estate, was impressed not only by "[Rodrigo's] knowledge, expertise, passion for his work, compassion and humbleness," she valued "his willingness to help community, willingness to guide and mentor a new professional like me in a very competitive industry and society where especially women are not considered skilled in handling real estate ventures on their own."

Virtually all the professionals who have worked with Santos for decades respect and admire him. His neighbors love him. Howard Fallon, whose children were in the same pre-kindergarten as Santos's, speaks of the personal and professional support he received from Santos after Fallon's daughter Kendra was killed in a plane crash.

Jeanette Gaehwiler was an engineer at S&U. Her brother, Martin Gaehwiler, writes how Santos hired her as an intern and helped her get into the graduate engineering program at Stanford University. Martin, and his mother, Kathryn Gaehwiler, speak about how Jeanette

- 4 -

continued to work at S&U while in school and after she graduated.  When Jeanette was 31, she developed a brain tumor.  Kathryn Gaehwiler states that "[Rodrigo] was especially supportive from the time she developed a brain tumor until her death two years later at age 33."  She says "[h]e kept her spirits up and mind active by providing challenging work within the confines of her often complicated treatment schedule. He was a trusted confidant who she relied on to reduce her stress by interceding to resolve frequent conflicts between her father and husband.  His accommodation of her needs, and caring support during this difficult time went beyond what anyone could expect from an employer.  He has been a good friend over the years since then."

The letters from his family reflect the love, support and kindness not found in all families.  He supports his disabled brother Mario financially and emotionally.  Santos has helped and paid college tuition for three of his nieces and nephews.  Universally, each writer describes the genuine remorse and contrition shown by Santos.

Even his ex-partner of over three decades, whom he betrayed, does not seek retribution.

In contrast, the victim impact statements submitted by the Government mostly rail at the dysfunctionality of DBI, the City Attorney, the Planning Department and other agencies in regulating real estate projects.

Santos has worked tirelessly to repay those who were defrauded and he is committed to making full restitution to his clients and the IRS.  The restitution sought by the San Francisco Department of Building Inspection ("DBI") lacks a factual basis.  DBI claims to have audited over 1,200 projects involving Santos and has found Notices of Violation ("NOV") in 25, or about 2%.  DBI does not state the percentage of NOV's it ordinarily discovers in audits.

The reputation that Rodrigo Santos earned over almost 40 years is not just tarnished, but destroyed.  He will no longer be able to practice the craft that his defined his adult life.  At 65, his professional prospects are limited.

- 5 -

Santos has readily accepted responsibility for his crimes. His remorse is genuine and real. He appreciates the shame that he has brought on himself and, by extension, his family. Santos understands that the collateral consequences to his family are his fault and his alone. He has not tried to justify, excuse or minimize his conduct. His Letter to the Court is Exhibit 3.

But Rodrigo Santos was not a public official. He took money from his clients and his partner. Although he sought favorable treatment from DBI Senior Inspector Curran, the client donations to SFGGR were designed primarily to convey the appearance of undue influence to the clients. Santos, like Curran, considered Curran's approvals proper and any variance with permit requirements minor.

Although the restitution paid by Santos does not affect the offense level under the U.S. Sentencing Guidelines, it demonstrates his commitment to correct the harm he caused.

The Presentence Report ("PSR") recommends a term of 30 months imprisonment. The Defense Mitigation Report is Exhibit 4.

Under 18 U.S.C. § 3553(a), the appropriate sentence for Rodrigo Santos would be one year and one day in federal prison followed by three years of supervised release.

. **ARGUMENT**

A sentence of one year and one day in federal prison is an appropriate sentence.

GUIDELINES CALCULATIONS

Under U.S. v. Booker, 543 U.S. 220, 233 (2005), the Guidelines are advisory and not binding on the court.

The defense agrees with the Presentence Report that Santos is Criminal History Category I. The defense would agree with the Offense Level Computation of 24 in the PSR except that the 16 offense level points for honest services wire fraud should not be counted in light of Percoco v.

- 6 -

U.S., No. 21-1158 (May 11, 2023), which significantly narrowed the liability of private citizens for honest services fraud. The sentencing range for Offense Level 24 is 51 to 63 months.

## SENTENCING STANDARDS

In fashioning an appropriate sentence under 18 U.S.C. § 3553(a), the Court should consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes by the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

    (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and are in effect on the date the defendant is sentenced; or

    (B)    ***

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Federal sentencing law provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of the person convicted of the offense which

- 7 -

a Court ... might receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; see United States v. Duarte, 901 F.2d 1498, 1500 (9th Cir. 1990). The law expressly limits the Court to fashion a sentence that is sufficient, but not greater than necessary, to achieve the sentencing goals reflected in 18 U.S.C. § 3553(a)(2).

**Nature and Circumstances of the Offense and Defendant's Characteristics**

Bank Fraud

Beginning in 2012, Rodrigo Santos began siphoning money from clients and his business partner for his personal use. Over the next four years the amount taken went from less than $20,000 per year to almost $200,000 per year. In 2016 and 2017, Santos diverted over $320,000 and $730,000 those years. The scheme was unsophisticated. Santos simply took the checks, endorsed them and deposited the checks into his personal account at an ATM.

The bank fraud resulted in a civil suit by the San Francisco City Attorney, City and County of San Francisco v. Santos & Urrutia Associates, et al., San Francisco Superior Court Case No. CGC-18-569923. Santos was later indicted for the same conduct alleged in the civil suit. That case is pending.

False Records

In 2020, Santos was served with a grand jury subpoena for documents related to six suspected misappropriated client checks. In response, Santos submitted invoices to the government through his counsel that falsely showed that the clients had received credit for the amount of the fraud.

Honest Services Fraud

Santos ingratiated himself with Bernard Curran (and others at DBI) to facilitate approval of his projects. Clients were told by Santos that Curran was associated with SFGGR and that a charitable contribution to it would engender good will with Curran. Curran was considered to be

- 8 -

less rigorous and more permissive than other building inspectors, and Santos did not believe that any of Curran's approvals were affected by the donations, but he promoted the perception of undue influence to his clients. Of 119 projects involving Curran and Santos, only 13 clients wrote checks to SFGGR amounting to $9,600.

<u>Tax Evasion</u>

Unsurprisingly, Santos did not report the proceeds from his crimes as income.

<u>Totality of the Circumstances</u>

The crimes were not sophisticated. Santos's actions were dishonest, but not malevolent. No victims were especially vulnerable or were suffered significant financial harm. Most of the restitution has been repaid as have the majority of victims. There were no residual collateral effects from the fraud. None of the projects involving Bernard Curran compromised life safety issues.

<u>Defendant's Characteristics</u>

Santos had otherwise led a law-abiding life until these cases. He was widely respected for his professional and civic contributions. By all accounts, Santos is a kind and generous person.

**Punishment, Deterrence, Public Protection and Defendant's Needs**

In some cases, a prison sentence may be appropriate for repeated criminality over an extended period of time.

Santos's individual circumstances are sufficiently rare that it is unlikely that any sentence would deter others. The shame, humiliation and public disgrace are ample deterrence for Santos.

The notoriety of these criminal cases and the civil suit, and the tenuous connection that has been drawn by some with the investigation of San Francisco city government, should be

adequate public protection.  Santos is unlikely to reoffend.  Santos has no obvious educational, vocational or medical needs.

**Restitution**

Santos has already repaid over $300,000 to identifiable client victims, has compensated his former partner Albert Urrutia, and has paid another $150,000 into the court registry for restitution.  When released from prison Santos will continue to pay restitution.

DBI requests $852,979.19 for past and future audit expenses.  Even ignoring the flawed and speculative methodology, DBI claims to have reviewed over 1,210 cases for Santos with only 25 NOVs.  DBI does not provide the frequency of NOVs in other audits or in general.

**2023 Amendments to U.S.S.G.**

Effective November 1, 2023, U.S.S.G. § 4 C1.1 provides for a two-point reduction in offense level for non-violent first offenders like Santos.  That decrease should apply here because offense level 24 substantially overstates the seriousness of the offense since the loss amount is substantial but diffuse, with relatively small loss amounts suffered by a relatively large number of victims.  See U.S.S.G. § 2B1.1 Application Note 21(C).

**CONCLUSION**

For the above reasons, defendant Rodrigo Santos seeks a sentence of one year and one day in federal prison.

Dated:  August 17, 2023                                   Respectfully submitted,

                                                                                  /s/ Randall Knox
                                                                                  Randall Knox
                                                                                  Attorney for Rodrigo Santos

- 10 -

PROOF OF PERSONAL SERVICE

<u>U.S. v. Rodrigo Santos</u>                                             Nos. 21CR00268-001 SI
                                                                              21CR00453-001 SI
                                                                              22CR00345-001 SI

I, the undersigned, declare: I am a citizen of the United States, over the age of eighteen years and am not a party to the within action. My business address is 870 Market Street, Suite 820, San Francisco, CA 94102. I served a true copy of the attached **DEFENDANT'S SENTENCING MEMORANDUM AND EXHIBITS** upon the below named persons at the address given below by personal service on August 17, 2023.

> **Casey Boome**
> **United States Attorney's Office**
> **450 Golden Gate Avenue**
> **San Francisco, CA 94102**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in the City and County of San Francisco, CA on the date next given below.

Dated: August 17, 2023

_____
Randall Knox

- 11 -